# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 01/08/2021 01:14 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk
Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Edward Moreton

CHARLES R. KELLER, Esq. (SBN 37542)
ANDREW B. KREEFT, Esq. (SBN 126673)
MARCO A. LUCIDO, Esq.   (SBN 322203)
FENTON & KELLER
A Professional Corporation
2801 Monterey-Salinas Highway
Post Office Box 791
Monterey, California  93942-0791
Telephone:      (831) 373-1241
Facsimile:      (831) 373-7219
Email:          CKeller@FentonKeller.com
Email:          AKreeft@FentonKeller.com
Email:          MLucido@FentonKeller.com

Attorneys for Plaintiffs
ALLEN STOBAUGH and MARY STOBAUGH

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### IN AND FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ALLEN STOBAUGH and MARY STOBAUGH,<br><br>          Plaintiffs,<br><br>     v.<br><br>PRINCESS CRUISE LINES, LTD., a Bermuda Corporation; and DOES 1 to 20,<br><br>          Defendants. | Case No.:       21STCV00680<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**1) INTENTIONAL BATTERY; and**<br>**2) NEGLIGENCE PER SE**<br><br>**JURY TRIAL DEMANDED**<br><br>Date of Filing:<br><br>Trial Date:          Not Set |

Plaintiffs Allen Stobaugh and Mary Stobaugh (the "Stobaughs") allege against Defendants Princess Cruise Lines Ltd. ("Princess") and DOES 1-20 (collectively, "Princess" or "Defendants") as follows:

### I.      NATURE OF THE ACTION

1.      In this action, Plaintiffs Allen Stobaugh and Mary Stobaugh, an elderly married couple, seek damages for the injuries and emotional distress they suffered from contracting the Novel Coronavirus ("COVID-19") some eleven days after they disembarked from their cruise on the Grand Princess, one of the many cruise ships owned and operated by Defendant Princess

{ABK-01069226;2}

Cruise Lines, Ltd. ("Princess").

2.     Princess is and was at all times relevant to this Complaint, a common carrier cruise line.  As a common carrier, Princess owed the Stobaughs the duty to use all human care, vigilance, and foresight possible under the circumstances to ensure that if the Stobaughs embarked on the Grand Princess, they could do so safely and travel free from harm.

3.     Princess breached its duty of care to the Stobaughs by making the conscious decision to board passengers, including the Stobaughs, on the Grand Princess on February 21, 2020, at a time when Princess knew that COVID-19 was a highly contagious and deadly disease and was already circulating among the passengers and crew who had been on the Grand Princess cruise which had just ended, many of whom intended to remain on board for the cruise on which the Stobaughs were booked.  The decision to board passengers by Princess was despicable and done in the conscious disregard for the health and safety of the passengers, including the Stobaughs and eventually and inevitably caused them significant injury and damages when they contracted the virus.

## II.     PARTIES

4.     Plaintiff Allen Stobaugh ("Mr. Stobaugh") is and was at all times relevant to this Complaint, a resident of the County of Santa Cruz, California.  Mr. Stobaugh is currently 77 years old.  Mr. Stobaugh was a ticketed passenger who boarded the Grand Princess in San Francisco, California, on February 21, 2020 (Member No. 690525812A).

5.     Plaintiff Mary Stobaugh ("Ms. Stobaugh") is and was at all times relevant to this Complaint, a resident of the County of Santa Cruz, California.  Ms. Stobaugh is currently 74 years old.  Ms. Stobaugh was a ticketed passenger who boarded the Grand Princess in San Francisco, California, on February 21, 2020 (Member No. 690525812B).

6.     Defendant Princess is, and at all times mentioned in the Complaint was, a cruise line company incorporated in Bermuda, with its principal place of business in Santa Clarita, California.  Princess operates and does business throughout the world, including the City and County of San Francisco, California.  Princess is a "common carrier" because it provides transportation to the general public, it maintains a regular place of business for the purpose of

transporting passengers, it advertises its transportation services to the general public, and it charges standard fees for its services.

7.     The Stobaughs are unaware of the true names and capacities of the defendants sued herein as DOES 1 through 20, inclusive, and therefore sue those defendants by fictitious names (the "Doe Defendants").

8.     The Stobaughs are informed and believe and thereon allege that each of the Doe Defendants are responsible in some manner for the actions alleged in this Complaint.  When the true names and capacities are ascertained, the Stobaughs will seek leave of court, if necessary, and amend this Complaint by asserting their true names and capacities.

9.     The Stobaughs are further informed and believe that Princess and DOES 1 through 20 (collectively "Princess" or "Defendants") are associated with and agents of one another.  The Stobaughs are further informed and believe, and on that basis allege, that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining Defendants.

## III.     JURISDICTION AND VENUE

10.     This Court has personal jurisdiction over Princess because Princess is headquarters and has its principal place of business located in Santa Clarita, California, and because Princess operates, markets its services to, and does business in the City and County of San Francisco, California.  This Court has subject matter jurisdiction over the action because the amount demanded exceeds $25,000.

11.     Venue is proper in the City and County of San Francisco, California because the intentional and tortious conduct giving rise to this action occurred in the City and County of San Francisco when, on February 21, 2020, Princess boarded the Stobaughs onto the Grand Princess in San Francisco, California, with knowledge that the Stobaughs and the other passengers would thereafter be continuously exposed to contracting COVID-19 until released from custody of Princess.

//

//

### IV.    PASSAGE CONTRACT

12.    The Stobaughs are an elderly couple in their mid-to-late 70s.   Neither Mr. Stobaugh nor Ms. Stobaugh ever saw, reviewed, or agreed to any Passage Contract before boarding the Grand Princess on February 21, 2020.  And, at no point, did the Princess website or anyone from Princess tell the Stobaughs that they must agree to a "Passage Contract" before they boarded the Grand Princess.

13.    Upon booking, Mr. Stobaugh received a booking confirmation.  At the end of the booking confirmation, in fine print, there is a notice that states "[u]pon booking the Cruise, each Passenger explicitly agrees to the terms of the Passage Contract."[1]  The Passage Contract is not available upon entering this link.  Instead, the user is brought to a page that includes several different Passage Contracts that "may apply."  Before the user can access the Passage Contract that pertains to his or her specific booking, the user must sign into the Princess Cruise Personalizer and navigate that site to locate the Passage Contract.  The Stobaughs were never able to locate the Passage Contract prior to boarding the Grand Princess on February 21, 2020.

14.    The Passage Contract is an unenforceable contract of adhesion and it would be unconscionable to require the Stobaughs—an elderly couple in their mid-to-late 70s—to pursue their claims in a court 400 miles away from their home residence.

15.    Section 15(A)(i) of the alleged Passage Contract between Princess and the Stobaughs states that claims must provide notice to Princess of any potential claims for injury, illness, or death within six months from the date of the underlying harm before commencing litigation.  The Stobaughs have complied with this alleged requirement.  On or about August 28, 2020, the Stobaughs provided a notice to claim to Princess for the Stobaughs contraction of COVID-19 in late March 2020.

//

//

//

---

[1] https://www.princess.com/legal/passage_contract/.

## V.     FACTUAL ALLEGATIONS

**COVID-19 was declared to be a global public health emergency nearly a month before Princess boarded the Stobaugh's on the Grand Princess.**

16.     On January 30, 2020, almost a month before the Stobaughs boarded the Grand Princess, the World Health Organization ("WHO") declared Coronavirus a public health emergency of international concern, the WHO's highest level of alarm.  At the time of this announcement, there were already 98 cases of COVID-19 in 18 countries outside China, including the United States.[2]

17.     The next day, on January 31, 2020, the United States Health and Human Services ("HHS") declared a public health emergency for the entire United States due to COVID-19.[3]

18.     Within a few days, of the WHO and HHS announcements, several countries, including the United States, began imposing air travel restrictions, as the number of cases worldwide soared to 17,0000 with over 360 reported deaths.[4]

19.     On February 20, 2020, the day before Princess invited the Stobaughs onto the Grand Princess, National Public Radio ("NPR") reported that, according to a disease-tracking dashboard created by the johns Hopkins Whiting School of Engineering, more than 75,000 COVID-19 cases had been confirmed worldwide, killing more than 2,000 people.[5]

**Several weeks before Princess boarded the Stobaughs on the Grand Princess, one of Princess' other ships—the Diamond Princess—had a COVID-19 outbreak, resulting in over 600 confirmed cases and at least two deaths.**

20.     The rapid, global spread of COVID-19 in early February 2020 would have put any global transportation carrier on notice to take extreme precautionary measures, or stop its operations altogether, in order to ensure the safety of its passengers.  However, in Princess' case, any lingering doubt about the direct and specific danger that COVID-19 posed to passengers on

---

[2] https://www.who.int/emergencies/diseases/novel-coronavirus-2019/interactive-timeline#.

[3] https://www.hhs.gov/about/news/2020/01/31/secretary-azar-declares-public-health-emergency-us-2019-novel-coronavirus.html.

[4] https://www.nytimes.com/2020/02/02/us/coronavirus-airports.html.

[5] https://www.npr.org/sections/goatsandsoda/2020/02/20/807745305/coronavirus-2-princess-diamond-cruise-ship-passengers-die-after-contracting-covi.

cruise ships disappeared with the highly publicized outbreak on Princess' Diamond Princess ship several weeks prior to the boarding of the Grand Princess on February 21, 2020.

21.     On January 20, 2020, the Diamond Princess cruise ship departed Yokohama, Japan, carrying approximately 3,700 passengers and crew.   On January 25, a symptomatic passenger departed the ship in Hong Kong, where he was evaluated; testing confirmed SARS-CoV-2 infection. On February 3, the ship returned to Japan, after making six stops in three countries. Japanese authorities were notified of the COVID-19 diagnosis in the passenger who disembarked in Hong Kong, and the ship was quarantined.[6]

22.     By February 16, 2020, NPR reported that over 350 cases of COVID-19 had been confirmed aboard the Diamond Princess cruise ship.[7]

23.     Accordingly, on February 18, 2020, the United States Centers for Disease Control ("CDC") issued the following media statement regarding the Diamond Princess outbreak: "*CDC believes the rate of new reports of positives new on board, especially among those without symptoms, highlights the high burden of infection on the ship and the potential for ongoing risk.*"[8]

24.     And on February 20, 2020, NPR Reported that a total of 634 people aboard the Diamond Princess had tested positive for COVID-19, resulting in the death of two passengers who were both in their mid-80s.[9]

25.      Given all of these developments, particularly with recent outbreak on Princess' Diamond Princess cruise ship, Princess had personal knowledge of the deadly risk associated with cruise ship travel during an ongoing global public health emergency.

//

---

[6] https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e3.htm.

[7] https://www.npr.org/2020/02/16/806470340/americans-evacuate-diamond-princess-cruise-ship-amid-spread-of-infection.

[8] https://www.cdc.gov/media/releases/2020/s0218-update-diamond-princess.html.

[9] https://www.npr.org/sections/goatsandsoda/2020/02/20/807745305/coronavirus-2-princess-diamond-cruise-ship-passengers-die-after-contracting-covi.

26.     Nevertheless, Princess consciously disregarded these known risks when faced with another likely COVID-19 positive passenger on a different cruise ship—the Grand Princess.

**Before the Stobaughs boarded the Grand Princess in San Francisco, California on February 21, 2020, Princess knew that a passenger on the Grand Princess cruise which had just ended in San Francisco had likely exposed the ship's passengers and crew members to COVID-19, and that many of the same passengers and crew would be on the Stobaugh's cruise.**

27.     During February 11–21, 2020, the Grand Princess sailed roundtrip from San Francisco, California, making four stops in Mexico.  Most of the crew and passengers from this voyage intended to remain on the Grand Princess for the cruise that the Stobaughs were booked, which departed from San Francisco, California on February 21, 2020, with a planned return date of March 7, 2020.[10]

28.     Dr. Tarling, Princess' Chief Medical Officer, admitted that a passenger aboard the earlier Grand Princess Mexico cruise fell ill within two or three days after boarding the ship. According to Dr. Tarling, the passenger was seen by a ship doctor on February 20, 2020, for serious respiratory problems.  During this doctor visit, the passenger told the ship doctor that he felt sick for about six or seven days.[11]

29.     At no time was this passenger—or anyone else on the ship—under any quarantine or other distancing restrictions, and, therefore, the entire ship and its passengers and crew were exposed to, and were potential carriers of, COVID-19, and, as explained above, many of the passengers and crew remained on board for the February 21, 2020, departure from San Francisco, California.

30.     Given these developments, particularly with the outbreak of COVID-19 on the Diamond Princess and the passenger who became sick on the Grand Princess cruise which had just ended, Princess and its agents, including Dr. Tarling, its Chief Medical Officer, knew or should have known that allowing the Stobaughs and other passengers to board the Grand Princess on February 21, 2020, posed a serious risk of deadly harm to all passengers that boarded that day.

---

[10] https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e3.htm.

[11] https://www.sfchronicle.com/health/article/Coronavirus-may-have-been-circulating-in-15114035.php#photo-19144993.

Nonetheless, Princess consciously disregarded the risks and charged forward with its deadly voyage instead of cancelling the cruise as it should have done.

31.     The Stobaughs are informed and believe and upon that information and belief allege that Princess had a strong financial incentive to knowingly board passengers on a cruise ship armed with a deadly and highly contagious virus instead of cancelling the cruise, which would have required it to refund the millions of dollars the passengers had paid for their tickets and in addition lose the additional revenue from on board passenger purchases. Faced with that choice, Princess chose its economic self-interest over the health and well-being of its customers to whom it owed the highest duty of care and in so doing knowingly and intentionally breached that duty of care by boarding the ship.

**Despite knowing that the Grand Princess was likely exposed to COVID-19, a highly contagious and deadly virus, Princess boarded the ship and failed to take any safety precautions or warn passengers.**

32.     On February 21, 2020, the Stobaughs boarded the Grand Princess for a two-week, round-trip cruise from San Francisco to Hawaii.

33.     Princess failed to take any safety precautions prior to or at the time of boarding passengers on the Hawaii-bound roundtrip Grand Princess cruise.

34.     Princess did not take measures to disinfect, sanitize, and/or decontaminate the Grand Princess ship and/or exposed surfaces prior to boarding passengers, including the Stobaughs, in San Francisco.

35.     Princess failed to warn, advise, and/or provide notice to the Hawaii-bound passengers prior to and/or at the time of boarding in San Francisco on February 21, 2020, that an ill passenger suffering from symptoms consistent with COVID-19 had been aboard the cruise that had just ended.

36.     Princess failed to subject any of the 62 passengers or 1,000 crew members, who had traveled on the Grand Princess with the infected passenger for approximately seven days prior and who were planning to continue their trip to Hawaii with the new passengers, to any additional or enhanced medical or health screening procedures, including a COVID-19 test.

//

37.     Princess failed to provide passengers, including the Stobaughs, with masks at the time of boarding in San Francisco and/or failed to implement any safety procedures for socializing on the cruise ship during travel, including social distancing and/or staying six feet apart from other unknown travelers.

38.     Instead, Princess proceeded as if everything was normal and nothing had changed, and the Grand Princess departed as scheduled on February 21, 2020.  In fact, prior to departing, Princess organized a muster drill in which the ship's passengers were essentially on top of each other in large groups at various muster stations on board the ship.  Princess did this knowing that the entire ship was potentially exposed to COVID-19.

**Princess failed to warn or advise passengers that COVID-19 was on-board the Grand Princess until March 4, 2020, almost two weeks after the ship left San Francisco, California.**

39.     The first ten or eleven days aboard the Grand Princess was typical in all respects. Princess allowed passengers to dine, drink, and attend entertainment events together in mass groups, with no warning about risk of infection and no protocols such as social distancing or mandatory masks in place.  During this time, their regular waiter missed a dinner serving but nevertheless returned to work the next morning on the breakfast shift.  The waiter looked sick, and when the Stobaughs asked why he missed the dinner serving, the waiter stated that he had "gotten sick."

40.     After several days on the cruise, the Stobaughs started hearing on television broadcast news that COVID-19 was spreading throughout the world.  During one broadcast, the Stobaugh's discovered that there were COVID-19 cases on board the Diamond Princess.  As an elderly couple in their late 70s, this news terrified the Stobaugh's, and they began to fear whether they too were at risk of COVID-19.  However, the Stobaughs began to believe they were overreacting because everything on the Grand Princess continued to proceed as normal.

41.     Unfortunately, the Stobaugh's worst fears were confirmed a few days later.  On March 4, 2020, the Stobaughs were first alerted to the virus being aboard the Grand Princess from a "Guest Health Advisory – Coronavirus" letter from Dr. Tarling.  The letter notified passengers of a potential exposure to the virus and announced that the ship would return directly to San

Francisco, California.  There was no mention of the previously exposed, overlapping passengers and crew from the ship's prior cruise to Mexico.

42.     On March 9, after the Stobaughs had been quarantined in their room for nearly five days, the Grand Princess was allowed to dock in Oakland.  The Stobaughs and all other passengers remained quarantined for two more days while Princess and government officials figured out where passengers would quarantine for the next two weeks on land.

43.     On March 11 at 10:00 a.m., the Stobaughs and other passengers disembarked from the Grand Princess and, while still in the custody and control of Princess, were taken into a tent inspection area.  They were then placed on a crowded bus with absolutely no social distancing or other precautionary measures despite several people coughing and sneezing.  While on this crowded bus, the Stobaughs were seated near a passenger who was assigned to the same dinner table as the Stobaughs during the Grand Princess voyage.  This passenger mentioned that he currently "had a temperature," potentially exposing the entire bus to COVID-19.  As it turns out, this passenger tested positive for COVID-19 a few days later.

44.     Immediately thereafter, the Stobaughs were bussed to Oakland International Airport, where they and the other bus passengers—including the passenger with a temperature—boarded a 727 for a 12:30 p.m. flight to Marine Corps Air Station – Miramar in San Diego, California.  The 727 that the Stobaughs boarded was full and had no social distancing measures in place.  Shortly after the plane took off, a meal was served to all passengers at the same time.  At this point, each passenger on the packed 727 consumed a meal with no masks or distancing of any kind.

45.     Eventually, the Stobaugh's landed at the Marine Corps Air Station – Miramar in San Diego, California, and they were finally able to exit the crowded plane.  They were then transported on another crowded bus to the Miramar marine bachelor quarters compound intended for the 14-day quarantine, where their six-day old face masks were finally replaced.

46.     The Stobaughs were quarantined at the bachelor quarters compound for about 11 days, from approximately March 11-22, 2020.  During the first four or five days, the Stobaughs and the other quarantined passengers were able to walk around and pick up meals together at a

central location.  On or about March 17, 2020, nearly a week after the Stobaughs disembarked the Grand Princess, they were finally tested for COVID-19.

47.     On or about March 21, 2020, while awaiting test results, Mr. Stobaugh developed COVID-19 symptoms and was escorted by ambulance to a Ramada Inn about 25 minutes away from the bachelor quarters quarantine compound.  Mr. Stobaugh spent the night there by himself while Ms. Stobaugh stayed behind at the quarantine compound.

48.     The next day, Ms. Stobaugh's test results came back positive for COVID-19, and though she was largely asymptomatic, she was transferred to the Ramada Inn to join Mr. Stobaugh.

49.     Mr. Stobaugh's COVID-19 symptoms persisted, and his condition deteriorated such that on or about March 23, 2020, Mr. Stobaugh watched Ms. Stobaugh wave goodbye to him as he was ushered out of the Ramada Inn and transferred to the Sharp Memorial Hospital in San Diego, California.

50.     For the next 12 days, Mr. Stobaugh was in a medically-induced coma on a ventilator.  The Stobaughs' daughter had to arrange for Mrs. Stobaugh to return home alone.

51.     On April 16, Mr. Stobaugh was released from the hospital after a 25-day stay.  A nurse accompanied Mr. Stobaugh on the flight home to Soquel.  He had lost more than 35 pounds, contracted a bladder infection, and still continues his long and painful recovery.

52.     In all, the Diamond Princess and Grand Princess had more than 800 total COVID-19 cases, including 10 deaths.  During February 3–March 13, in the United States, approximately 200 cases of COVID-19 were confirmed among returned cruise travelers from multiple ship voyages, including the Diamond Princess and Grand Princess, accounting for approximately 17% of total reported U.S. cases at the time.[12]

53.     As a result, "[t]he Coast Guard is now investigating whether Carnival violated a federal law [33 CFR § 160.216] that requires ships approaching U.S. ports to report outbreaks of illness to the Coast Guard and, in certain cases, to the CDC.  The rules are specific, defining a

---

[12] https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e3.htm.

fever as a temperature of 100.4 degrees Fahrenheit or higher, as well as anyone who reports feeling feverish."[13]

## VI.     COUNT ONE - INTENTIONAL BATTERY

### (Against All Defendants)

54.     The Stobaughs repeat all of the previous allegations contained in Paragraphs 1-53 of this Complaint as if set forth in full herein.

55.     Defendants made the conscious decision to board passengers, including the Stobaughs, on the Grand Princess on February 21, 2020, at a time when they knew that COVID-19 was a highly contagious and deadly disease and was already circulating among the passengers and crew who had been who had been on the Grand Princess cruise which had just ended, many of whom intended to remain on board for the cruise on which the Stobaughs were booked.

56.     Defendants' decision to board passengers was despicable and done intentionally in the conscious disregard for the health and safety of the passengers, including the Stobaughs, and eventually and inevitably caused them significant injury and damages when they contracted the virus.   Defendants' despicably and intentionally caused the Stobaughs to contract COVID-19 some eleven days after they disembarked from their cruise on the Grand Princess.

57.     In boarding the passengers, including the Stobaughs, on the Grand Princess cruise on February 21, 2020, Defendants were substantially certain that passengers would contract COVID-19.   Nonetheless, Defendants consciously disregarded certain risk of harm—including the likely death of a handful of passengers—and proceeded with its deadly voyage as if nothing was wrong instead of cancelling the cruise, as it should have done.

58.     Unlike Defendants—who knew the Grand Princess was exposed to COVID-19— the Stobaughs had no notice or awareness that they would be exposed to and would likely contract COVID-19 by boarding the Grand Princess.   Moreover, at no time did the Stobaughs consent to contracting COVID-19.

---

[13]     https://www.wsj.com/articles/cruise-ships-set-sail-knowing-the-deadly-risk-to-passengers-and-crew-11588346502.

59.     As a direct and legal result of Defendants' conscious disregard of the substantial certainty that passengers would contract COVID-19 if they boarded the Grand Princess, the Stobaughs contracted COVID-19 while in quarantine on land, causing them, and continuing to cause them, great mental, physical, emotional, and nervous pain and suffering.  The Stobaughs are informed and believe and on this information and belief allege that these injuries will result in permanent disability to both Mr. and Ms. Stobaugh.  As a result of these injuries, the Stobaughs have suffered general damages.

61.     As a further direct and legal result of Defendants' despicable and intentional conduct, the Stobaughs incurred, and will likely continue to incur, medical and related expenses. The Stobaughs do not know at this time the exact amount of expenses that have been incurred and that will be incurred in the future.

62.     As a further direct and legal result of Defendants' despicable and intentional conduct, the Stobaughs' earning capacity has been and will be greatly impaired, both in the past and present in an amount according to proof.

63.     In doing the wrongful acts as hereinabove alleged, Defendants acted with conscious and/or willful disregard for the health, safety and general welfare and rights of the Stobaughs.  Such actions were and are despicable, shocking and offensive and entitle the Stobaughs to an award of punitive damages against Princess in an amount to be determined at trial.

**VII.    COUNT TWO - NEGLIGENCE PER SE**

**(Against All Defendants)**

64.     The Stobaughs repeat all of the previous allegations contained in Paragraphs 1-63 of this Complaint as if set forth in full herein.

65.     As a common carrier cruise line with a Chief Medical Officer who holds advanced medical degrees and has a significant amount of experience managing contagious diseases, Defendants owed the Stobaughs a duty to use all human care, vigilance, and foresight possible under the circumstances to ensure that they carried the Stobaughs safely and free of harm.

//

66.     Defendants breached this duty to the Stobaughs and caused them significant injury and harm.  Princess violated 33 CFR § 160.216 when it failed to provide the United States Coast Guard and the CDC notice that a prior passenger on the Grand Princess potentially exposed the entire ship to COVID-19.  Moreover, despite the potential COVID-19 exposure to the entire ship, Defendants consciously disregarded the serious risk of deadly harm and invited the Stobaugh's to the COVID-19-infested Grand Princess and failed to take all necessary precautions to keep the virus from spreading before, during, and after the voyage.

67.     As a direct and legal result of Defendants' failure to provide federal authorities with legally-mandated notices of the potential COVID-19 exposure to the Grand Princess and its decision to negligently invite the Stobaughs on board on February 21, 2020, the Stobaughs contracted COVID-19 while in quarantine on land, causing them, and continuing to cause them, great mental, physical, emotional, and nervous pain and suffering.  The Stobaughs are informed and believe and on this information and belief allege that these injuries will result in permanent disability to both Mr. and Ms. Stobaugh.  As a result of these injuries, the Stobaughs have suffered general damages.

68.     As a further direct and legal result of the negligence of Defendants, the Stobaughs incurred, and will likely continue to incur, medical and related expenses.  The Stobaughs do not know at this time the exact amount of expenses that have been incurred and that will be incurred in the future.

69.     As a further direct and legal result of the negligence of Defendants, the Stobaughs' earning capacity has been and will be greatly impaired, both in the past and present in an amount according to proof.

70.     In doing the wrongful acts as hereinabove alleged, Defendants acted with conscious and/or willful disregard for the health, safety and general welfare and rights of the Stobaughs.  Such actions were and are despicable, shocking and offensive and entitle the Stobaughs to an award of punitive damages against Princess in an amount to be determined at trial.

//

71.     Princess' failure to heed the warnings of the CDC and to apply the knowledge gained from the outbreak aboard the Diamond Princess, its decision to proceed with the Grand Princess cruise to Hawaii without enacting heightened health and medical screenings for all passengers and crew, without disinfecting or decontaminating the ship, and without warning the Stobaughs and passengers of the perils of boarding a ship armed with COVID-19 is an extreme departure from what a reasonable cruise ship owner and operator would do and reflects callousness and an extreme, willful, and outrageous disregard for the health and safety of its passengers.  In all of its decisions and acts as alleged in this Complaint, Princess was driven by its economic  self-interest  and instead of cancelling the cruise as it should have done and refunded the  millions of dollars to the customers who had booked passage on the cruise, it chose not to expend resources for the safety and health of passengers, but rather keep them ignorant and in the dark so they would board ship  and spend money on onboard purchases, where Princess makes its largest profits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Allen Stobaugh and Mary Stobaugh demand judgment against Defendants Princess and DOES 1-20 for the following:

On ALL CAUSES OF ACTION:

1.     Compensatory and general damages according to proof;

2.     Damages for present and future medical and related expenses according to proof;

3.     Damages for present and future loss of earnings according to proof;

4.     Punitive damages according to proof;

5.     Pre and post judgment interest according to law;

6.     Attorneys fees according to law;

7.     Costs of this action; and

8.     Any other relief the court considers equitable and just.

//

//

//

**DEMAND FOR JURY TRIAL**

The Stobaughs demand a trial by jury on all issues.

Dated: December 30, 2020                    FENTON & KELLER, PC


By:  /s/ Andrew B. Kreeft
     Charles R. Keller, Esq.
     Andrew B. Kreeft, Esq.
     Marco A. Lucido, Esq.
     Attorneys for Plaintiffs ALLEN
     STOBAUGH and MARY STOBAUGH

Electronically FILED by Superior Court of California, County of Los Angeles on 01/08/2021 11:11AM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez, Deputy Clerk

Case 2:21-cv-00870-JAK-AFM   Document 1   Filed 01/29/21   Page 18 of 47   Page ID #:21STCV00680

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
PRINCESS CRUISE LINES, LTD., a Bermuda Corporation;
and DOES 1 to 20,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ALLEN STOBAUGH and MARY STOBAUGH

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site *(www.lawhelpcalifornia.org)*, the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

**CASE NUMBER**
*(Número del Caso):*
21STCV00680

Superior Court of California, County of Los Angeles (North Valley District - Chatsworth)
9425 Penfield Avenue
Chatsworth, CA 91411

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Charles R. Keller (SBN 37542) / Andrew B. Kreeft (SBN 126673)  FENTON & KELLER, PC
2801 Monterey-Salinas Highway / P.O. Box 791 (831) 373-1241
Monterey, CA 93942-0791

DATE: 01/08/2021
*(Fecha)*

Clerk, by H. Flores-Hernandez , Deputy
*(Secretario)* *(Adjunto)*

Sherri R. Carter Executive Officer / Clerk of Court

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**


[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

35869.35168

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>01/08/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ H. Flores-Hernandez _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>21STCV00680 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Edward B. Moreton | 27 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 01/08/2021
　　(Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By H. Flores-Hernandez , Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

**FILED**

Superior Court of California
County of Los Angeles

2020-SJ-002-00

**FEB 24 2020**

Sherri R Carter, Executive Officer/Clerk

By_____ Deputy
Lorena Albino

1
2
3 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

4 **FOR THE COUNTY OF LOS ANGELES**

5

6 IN RE PERSONAL INJURY ) CASE NO.:
COURT ("PI COURT") PROCEDURES )
7 SPRING STREET COURTHOUSE ) FIRST AMENDED STANDING ORDER
(EFFECTIVE FEBRUARY 24, 2020) ) RE:  PERSONAL INJURY PROCEDURES
8 _____ ) AT THE SPRING STREET COURTHOUSE

9

10

11 **ALL HEARINGS ARE SET IN THE DEPARTMENT AS
REFLECTED IN THE NOTICE OF CASE ASSIGNMENT**
12

13 **FINAL STATUS CONFERENCE:**

14   DATE: _____ AT 10:00 A.M.

15 **TRIAL:**

16   DATE: _____ AT 8:30 A.M.

17

18 **OSC RE DISMISSAL
(CODE CIV. PROC., § 583.210):**

19   DATE: _____ AT 8:30 A.M.

20

21  TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:

22  Pursuant to the California Code of Civil Procedure ("C.C.P."), the California Rules of

23 Court ("C.R.C.") and the Los Angeles County Court Rules ("Local Rules"), the Los Angeles

24 Superior Court ("LASC" or "Court") HEREBY AMENDS AND SUPERSEDES THE

25 SEPTEMBER 26, 2019 STANDING ORDER AND, GENERALLY ORDERS AS FOLLOWS

26 IN THIS AND ALL OTHER GENERAL JURISDICTION PERSONAL INJURY ("PI")

27 ACTIONS FILED IN THE CENTRAL DISTRICT.

28 ///

1.       To ensure proper assignment to a PI Court, plaintiff(s) must carefully fill out the Civil Case Cover Sheet Addendum (form LACIV 109).  The Court defines "personal injury" as: "an unlimited civil case described on the Civil Case Cover Sheet Addendum and Statement of Location (LACIV 109) as Motor Vehicle-Personal Injury/Property Damage/Wrongful Death; Personal Injury/Property Damage/Wrongful Death-Uninsured Motorist; Product Liability (other than asbestos or toxic/environmental); Medical Malpractice-Physicians & Surgeons; Other Professional Health Care Malpractice; Premises Liability; Intentional Bodily Injury/Property Damage/Wrongful Death; or Other Personal Injury/Property Damage/Wrongful Death.  An action for intentional infliction of emotional distress, defamation, civil rights/discrimination, or malpractice (other than medical malpractice), is not included in this definition.  An action for injury to real property is not included in this definition" (Local Rule 2.3(a)(1) (A)).

Consistent with Local Rule 2.3(a)(1)(A), the Court will assign a case to the PI Courts if plaintiff(s) checks any of the following boxes in the Civil Case Cover Sheet Addendum:

☐ A7100 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death

☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist

☐ A7260 Product Liability (not asbestos or toxic/environmental)

☐ A7210 Medical Malpractice – Physicians & Surgeons

☐ A7240 Medical Malpractice – Other Professional Health Care Malpractice

☐ A7250 Premises Liability (e.g., slip and fall)

☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism etc.)

☐ A7220 Other Personal Injury/Property Damage/Wrongful Death

The Court will not assign cases to the PI Courts if plaintiff(s) checks any boxes elsewhere in the Civil Case Cover Sheet Addendum (any boxes on pages two and three of that form).

The Court sets the above dates in this action in the PI Court as reflected in the Notice of Case Assignment at the Spring Street Courthouse, 312 North Spring Street, Los Angeles, CA

First Amended Standing Order Re Personal Injury Procedures, Spring Street Courthouse

2020-SJ-002-00

1   90012 (C.R.C. Rules 3.714(b)(3), 3.729).

2   **FILING OF DOCUMENTS**

3   2.      With the exception of self-represented litigants or parties or attorneys that have obtained

4   an exemption from mandatory electronic filing, parties must electronically file documents.

5   Filings are no longer accepted via facsimile. The requirements for electronic filing are detailed

6   in the Court's operative General Order Re Mandatory Electronic Filing for Civil, available online

7   at www.lacourt.org (link on homepage).

8   **SERVICE OF SUMMONS AND COMPLAINT**

9   3.      Plaintiff(s) shall serve the summons and complaint in this action upon defendant(s) as

10  soon as possible but no later than three years from the date when the complaint is filed

11  (C.C.P. § 583.210, subd. (a)).  On the OSC re Dismissal date noted above, the PI Court will

12  dismiss the action and/or all unserved parties unless the plaintiff(s) shows cause why the action

13  or the unserved parties should not be dismissed (C.C.P. §§ 583.250; 581, subd. (b)(4)).

14  4.      The Court sets the above trial and final status conference ("FSC") dates on the condition

15  that plaintiff(s) effectuate service on defendant(s) of the summons and complaint within six

16  months of filing the complaint.

17  5.      The PI Court will dismiss the case without prejudice pursuant to Code of Civil Procedure

18  § 581 when no party appears for trial.

19  **STIPULATIONS TO CONTINUE TRIAL**

20  6.      Provided that all parties agree (and there is no violation of the "five-year rule" (C.C.P.

21  § 583.310)), the parties may advance or continue any trial date in the PI Courts without showing

22  good cause or articulating any reason or justification for the change.  To continue or advance a

23  trial date, the parties (or their counsel of record) should jointly execute and submit a Stipulation

24  to Continue Trial, FSC and Related Motion/Discovery Dates (form LACIV CTRL-242, available

25  on the court's website, Personal Injury Court link). The PI Courts schedule FSCs at 10:00 a.m.,

26  eight court days before the trial date. Parties seeking to continue the trial and FSC dates shall

27  file the stipulation at least eight court days before the FSC date.  Parties seeking to advance the

28  trial and FSC dates shall file the stipulation at least eight court days before the proposed advanced

First Amended Standing Order Re Personal Injury Procedures, Spring Street Courthouse

2020-SJ-002-00

FSC date (C.C.P. § 595.2;  Govt. Code § 70617, subd. (c)(2)). In selecting a new trial date, parties should avoid setting on any Monday, or the Tuesday following a court holiday.  Parties may submit a maximum of two stipulations to continue trial, for a total continuance of six months. Subsequent requests to continue trial will be granted upon a showing of good cause by noticed motion.  This rule is retroactive so that any previously granted stipulation to continue trial will count toward the maximum number of allowed continuances.

**NO CASE MANAGEMENT CONFERENCES**

7.       The PI Courts do not conduct case management conferences.  The parties need not file a Case Management Statement.

**LAW AND MOTION**

8.       Any and all electronically-filed documents must be text searchable and bookmarked. (*See* operative General Order re Mandatory Electronic Filing in Civil).

**COURTESY COPIES REQUIRED**

9.       Pursuant to the operative General Order re Mandatory Electronic Filing, courtesy copies of certain documents must be submitted directly to the PI Court courtrooms at the Spring Street Courthouse.  The PI Courts also strongly encourage the parties filing and opposing lengthy motions, such as motions for summary judgment/adjudication, to submit one or more three-ring binders organizing the courtesy copy behind tabs.  Any courtesy copies of documents with declarations and/or exhibits must be tabbed (C.R.C. Rule 3.1110(f)).  All deposition excerpts referenced in briefs must be marked on the transcripts attached as exhibits (C.R.C. Rule 3.1116(c)).

**RESERVATION HEARING DATE**

10.      Parties must reserve hearing dates for motions in the PI Courts using the Court Reservation System (CRS) available online at *www.lacourt.org* (link on homepage).  After reserving a motion hearing date, the reservation requestor must submit the papers for filing with the reservation receipt number printed on the face page of the document under the caption and attach the reservation receipt as the last page.  Parties or counsel who are unable to utilize the online CRS may reserve a motion hearing date by calling the PI courtroom, Monday through

First Amended Standing Order Re Personal Injury Procedures, Spring Street Courthouse

1    Friday, between 3:00 p.m. and 4:00 p.m.

2    **WITHDRAWAL OF MOTIONS**

3    11.    California Rules of Court, Rule 3.1304(b) requires a moving party to notify the court

4    immediately if a matter will not be heard on the scheduled date.  In keeping with that rule, the

5    PI Courts require parties to comply with Code of Civil Procedure section 472(a) with regard to

6    the amending of pleadings related to demurrers or motions to strike so that the PI Courts do not

7    needlessly prepare tentative rulings for these matters.

8    **DISCOVERY MOTIONS**

9    12.    The purpose of an Informal Discovery Conference ("IDC") is to assist the parties to

10   resolve and/or narrow the scope of discovery disputes.  Lead trial counsel on each side, or another

11   attorney with full authority to make binding agreements, must attend in person.  The PI judges

12   have found that, in nearly every case, the parties amicably resolve disputes with the assistance

13   of the Court.

14   13.    Parties **must** participate in an IDC **before** a Motion to Compel Further Responses to

15   Discovery will be heard unless the moving party submits evidence, by way of declaration, that

16   the opposing party has failed or refused to participate in an IDC.  Scheduling or participating in

17   an IDC does not automatically extend any deadlines imposed by the Code of Civil Procedure for

18   noticing and filing discovery motions.  Ideally, the parties should participate in an IDC before a

19   motion is filed because the IDC may avoid the necessity of a motion or reduce its scope.  Because

20   of that possibility, attorneys are encouraged to stipulate to extend the 45 (or 60) day deadline for

21   filing a motion to compel further discovery responses in order to allow time to participate in an

22   IDC.

23         If parties do not stipulate to extend the deadlines, the moving party may file the motion

24   to avoid it being deemed untimely.    However, the IDC must take place before the motion is

25   heard so it is suggested that the moving party reserve a date for the motion hearing that is at least

26   60 days after the date when the IDC reservation is made.  Motions to Compel Further Discovery

27   Responses are heard at 10:00 a.m.  If the IDC is not productive, the moving party may advance

28   the hearing on a Motion to Compel Further Discovery Responses on any available hearing date

1    that complies with the notice requirements of the Code of Civil Procedure.

2    14.    Parties must reserve IDC dates in the PI Courts using CRS, which is available online at

3    www.lacourt.org (link on homepage). Parties must meet and confer regarding the available dates

4    in CRS prior to accessing the system. After reserving the IDC date, the reservation requestor

5    must file and serve an Informal Discovery Conference Form for Personal Injury Courts (form

6    LACIV 239) at least 15 court days prior to the conference and attach the CRS reservation receipt

7    as the last page. The opposing party may file and serve a responsive IDC form, briefly setting

8    forth that party's response, at least ten court days prior to the IDC.

9    15.    Time permitting, the PI Hub judges may be available to participate in IDCs to try to

10    resolve other types of discovery disputes.

11    **EX PARTE APPLICATIONS**

12    16.    Under the California Rules of Court, courts may only grant *ex parte* relief upon a

13    showing, by admissible evidence, that the moving party will suffer "irreparable harm,"

14    "immediate danger," or where the moving party identifies "a statutory basis for granting relief

15    ex parte" (C.R.C. Rule 3.1202(c)). The PI Courts have no capacity to hear multiple *ex parte*

16    applications or to shorten time to add hearings to their fully booked motion calendars. The PI

17    Courts do not regard the Court's unavailability for timely motion hearings as an "immediate

18    danger" or threat of "irreparable harm" justifying *ex parte* relief. Instead of seeking *ex parte*

19    relief, the moving party should reserve the earliest available motion hearing date (even if it is

20    after the scheduled trial date) and file a motion to continue trial. Parties should also check

21    CRS from time to time because earlier hearing dates may become available as cases settle or

22    hearings are taken off calendar.

23    **REQUEST FOR TRANSFER TO INDEPENDENT CALENDAR DEPARTMENT**

24    17.    Parties seeking to transfer a case from a PI Court to an Independent Calendar ("IC")

25    Court shall file and serve the Court's "Motion/Opposition/Stipulation to Transfer Complicated

26    Personal Injury Case to Independent Calendar Court" (form LACIV 238, available on the Court's

27    website under the PI Courts link). The PI Courts will transfer a matter to an IC Court if the case

28    is not a "Personal Injury" case as defined in this Order, or if it is "complicated." In determining

1   whether a personal injury case is "complicated" the PI Courts will consider, among other things,

2   the number of pretrial hearings or the complexity of issues presented.

3   18.     Parties opposing a motion to transfer have five court days to file an Opposition (using

4   the same LACIV 238 Motion to Transfer form).

5   19.     The PI Courts will not conduct a hearing on any Motion to Transfer to IC Court. Although

6   the parties may stipulate to transfer a case to an Independent Calendar Department, the PI Courts

7   will make an independent determination whether to transfer the case or not.

8   **FINAL STATUS CONFERENCE**

9   20.     Parties shall comply with the requirements of the PI Courts' operative Standing Order

10  Re Final Status Conference, which shall be served with the summons and complaint.

11  **JURY FEES**

12  21.     Parties must pay jury fees no later than 365 calendar days after the filing of the initial

13  complaint (C. C. P. § 631, subd. (c)(2)).

14  **JURY TRIALS**

15  22.     The PI Courts do not conduct jury trials. On the trial date, a PI Court will contact the

16  Master Calendar Court, Department One, in the Stanley Mosk Courthouse. Department One

17  will assign cases for trial to dedicated Civil Trial Courtrooms and designated Criminal

18  Courtrooms.

19  **SANCTIONS**

20  23.     The Court has discretion to impose sanctions for any violation of this general order

21  (C.C.P. §§ 128.7, 187 and Gov. Code, § 68608, subd. (b)).

22

23

24  Dated: _Feb. 24, 2020_____

25                                           SAMANTHA P. JESSNER
                                             Supervising Judge of Civil Courts

26

27

28

First Amended Standing Order Re Personal Injury Procedures, Spring Street Courthouse

2020-SJ-004-00

**FILED**
Superior Court of California
County of Los Angeles

FEB 24 2020

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Lorena Albino

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| IN RE PERSONAL INJURY CASES ASSIGNED TO THE PERSONAL INJURY COURTS AT THE SPRING STREET COURTHOUSE | ) THIRD AMENDED STANDING ORDER<br>) RE: FINAL STATUS CONFERENCE,<br>) PERSONAL INJURY ("PI") COURTS<br>) (Effective January 13, 2020)<br>) |

The dates for Trial and the Final Status Conference ("FSC") having been set in this matter, the **COURT HEREBY AMENDS AND SUPERSEDES ITS August 9, 2019 STANDING ORDER RE: FINAL STATUS CONFERENCE, PERSONAL INJURY ("PI") COURTS AND, GENERALLY ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION PERSONAL INJURY ACTIONS:**

## 1.     PURPOSE OF THE FSC

The purpose of the FSC is to verify that the parties/counsel are completely ready to proceed with trial continuously and efficiently, from day to day, until verdict.  The PI Courts will verify at the FSC that all parties/counsel have (1) prepared the Exhibit binders and Trial Document binders and (2) met and conferred in an effort to stipulate to ultimate facts, legal issues, motions in limine, and the authentication and admissibility of exhibits.

///

///

///

## 2.    TRIAL DOCUMENTS TO BE FILED

At least five calendar days prior to the Final Status Conference, the parties/counsel shall serve and file the following Trial Readiness Documents:

### A.    TRIAL BRIEFS (OPTIONAL)

Each party/counsel may, but is not required to, file a trial brief succinctly identifying:

> (1) the claims and defenses subject to litigation;

> (2) the major legal issues (with supporting points and authorities);

> (3) the relief claimed and calculation of damages sought; and

> (4) any other information that may assist the court at trial.

### B.    MOTIONS IN LIMINE

Before filing motions in limine, the parties/counsel shall comply with the statutory notice provisions of Code of Civil Procedure ("C.C.P.") Section 1005 and the requirements of Los Angeles County Court Rule ("Local Rule") 3.57(a). The caption of each motion in limine shall concisely identify the evidence that the moving party seeks to preclude. Parties filing more than one motion in limine shall number them consecutively. Parties filing opposition and reply papers shall identify the corresponding motion number in the caption of their papers.

### C.    JOINT STATEMENT TO BE READ TO THE JURY

For jury trials, the parties/counsel shall work together to prepare and file a joint written statement of the case for the court to read to the jury (Local Rule 3.25(g)(4)).

### D.    JOINT WITNESS LIST

The parties/counsel shall work together to prepare and file a joint list of all witnesses that each party intends to call, excluding impeachment and rebuttal witnesses (Local Rule 3.25(g)(5)). The joint witness list shall identify each witness by name, specify which witnesses are experts, estimate the length of the direct, cross examination and re-direct examination (if any) of each, and include a total of the number of hours for all witness testimony. The parties/counsel shall identify all potential witness scheduling issues and special requirements. Any party/counsel who seeks to elicit testimony from a witness not identified on the witness list must first make a showing of good cause to the trial court.

### E. LIST OF PROPOSED JURY INSTRUCTIONS
### (JOINT AND CONTESTED)

The parties/counsel shall jointly prepare and file a list of proposed jury instructions, organized in numerical order, specifying the instructions upon which all sides agree and the contested instructions, if any. The List of Proposed Jury Instructions must include a space by each instruction for the judge to indicate whether the instruction was given.

### F. JURY INSTRUCTIONS
### (JOINT AND CONTESTED)

The parties/counsel shall prepare a complete set of full-text proposed jury instructions, editing all proposed California Civil Jury Instructions and insert party name(s) and eliminate blanks, brackets, and irrelevant material. The parties/counsel shall prepare special instructions in a format ready for submission to the jury with the instruction number, title, and text only (i.e., there should be no boxes or other indication on the printed instruction itself as to the requesting party).

### G. JOINT VERDICT FORM(S)

The parties/counsel shall prepare and jointly file a proposed general verdict form or special verdict form (with interrogatories) acceptable to all sides (Local Rule 3.25(g)(8)). If the parties/counsel cannot agree on a joint verdict form, each party must separately file a proposed verdict form.

### H. JOINT EXHIBIT LIST

The parties/counsel shall prepare and file a joint exhibit list organized with columns identifying each exhibit and specifying each party's evidentiary objections, if any, to admission of each exhibit. The parties/counsel shall meet and confer in an effort to resolve objections to the admissibility of each exhibit.

### I. PAGE AND LINE DESIGNATION FOR
### DEPOSITION AND FORMER TESTIMONY

If the parties/counsel intend to use deposition testimony or former trial testimony in lieu of any witness's live testimony, the parties/counsel shall meet and confer and jointly prepare and file a chart with columns for each of the following: 1) the page and line designations of the deposition or

former testimony requested for use, 2) objections, 3) counter-designations, 4) any responses thereto, and 5) the Court's ruling.

## 3.     EVIDENTIARY EXHIBITS

The parties/counsel shall jointly prepare (and be ready to temporarily lodge for inspection at the FSC) three sets of tabbed, internally paginated by document, and properly-marked exhibits, organized numerically in three-ring binders (a set for the Court, the Judicial Assistant and the witnesses). The parties/counsel shall mark all non-documentary exhibits and insert a simple written description of the exhibit behind the corresponding numerical tab in the exhibit binder. If the parties have a joint signed exhibit list and electronic copies of their respective exhibits, then the parties/counsel will not be required to produce exhibit binders at the FSC. However, the exhibit binders will be required by the assigned trial judge when the trial commences. In the absence of either a joint signed exhibit list or electronic copies, exhibit binders will be required to be produced by all parties/counsel at the FSC.

## 4.     TRIAL BINDERS REQUIRED IN THE PI COURTS

The parties/counsel shall jointly prepare (and be ready to temporarily lodge and include the following for inspection at the FSC) the Trial Documents consisting of conformed copies (if available), tabbed and organized into three-ring binders with a table of contents that includes the following:

| | |
|---|---|
| Tab A: | Trial Briefs (Optional) |
| Tab B: | Motions in Limine |
| Tab C: | Joint Statement to Be Read to the Jury |
| Tab D: | Joint Witness List |
| Tab E: | Joint List of Jury Instructions (identifying the agreed upon and contested instructions) |
| Tab F: | Joint and Contested Jury Instructions |
| Tab G: | Joint and/or Contested Verdict Form(s) |
| Tab H: | Joint Exhibit List |

THIRD AMENDED ORDER RE FINAL STATUS CONFERENCE, PERSONAL INJURY COURTS
(Effective January 13, 2020)

Tab I:     Joint Chart of Page and Line Designation(s) for Deposition and

Former Testimony

Tab J:     Copies of the Current Operative Pleadings (including the operative complaint,

answer, cross-complaint, if any, and answer to any cross-complaint).

The parties/counsel shall organize motions in limine (tabbed in numerical order) behind Tab B with the opposition papers and reply papers for each motion placed directly behind the moving papers. The parties shall organize proposed jury instructions behind Tab F, with the agreed upon instructions first in order followed by the contested instructions (including special instructions) submitted by each side.

## 5.     FAILURE TO COMPLY WITH FSC OBLIGATIONS

The court has discretion to require any party/counsel who fails or refuses to comply with this Amended Standing Order to Show Cause why the Court should not impose monetary, evidentiary and/or issue sanctions (including the entry of a default or the striking of an answer).

Dated: *Feb. 24, 2020*

SAMANTHA P. JESSNER
Supervising Judge of Civil Courts

THIRD AMENDED ORDER RE FINAL STATUS CONFERENCE, PERSONAL INJURY COURTS
(Effective January 13, 2020)

2020-SJ-003-00

**FILED**
Superior Court of California
County of Los Angeles

FEB 24 2020

Sherri R. Carter, Executive Officer/Clerk

By_____ Deputy
Lorena Albino

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE PERSONAL INJURY CASES ASSIGNED TO PERSONAL INJURY COURTROOMS AT THE SPRING STREET COURTHOUSE _____ | ) FIFTH AMENDED STANDING ORDER ) RE: MANDATORY SETTLEMENT ) CONFERENCE ) (Effective February 24, 2020) ) |

TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:

Pursuant to California Code of Civil Procedure, the California Rules of Court and the Los Angeles Court Rules, the Los Angeles Superior Court ("Court") HEREBY AMENDS AND SUPERSEDES THE September 26, 2019 FOURTH AMENDED STANDING ORDER, AND THE COURT HEREBY ISSUES THE FOLLOWING FIFTH AMENDED STANDING ORDER:

The Court orders the parties to participate in a Mandatory Settlement Conference ("MSC") supervised by a Personal Injury Court Judge and staffed by volunteer settlement attorneys from the American Board of Trial Advocates, the Association of Southern California Defense Counsel, and the Consumer Attorneys Association of Los Angeles.

1.  Plaintiff's counsel shall, within two (2) court days of the Court's order of an MSC, access the Consumer Attorneys Association of Los Angeles ("CAALA") website, at www.caala.org, and under "The LASC COURT CONNECTION" click on "LA Superior Court PI MSC (Parties)," to register and schedule a mutually agreed upon time for the MSC prior to the trial date.

2.  A mandatory settlement conference statement shall be served on all parties not less than five (5) court days before the scheduled MSC. Parties' counsel shall serve

1

1  opposing counsel, CAALA at stuart@caala.org, and the Court by email.   Email

2  addresses for the PI courtrooms can be found on the Court's website at

3  www.lacourt.org, under "*Division*" go to "*Civil*", then go to "*General Jurisdiction*

4  *PI Court*" then click on "*PI Courtroom Email Addresses*".  CAALA will forward

5  the mandatory settlement conference statements to the settlement attorneys.

6  3.  Pursuant to California Rules of Court, Rule 3.1380(b) and Los Angeles Superior

7  Court Rule 3.25(d), trial counsel, the parties and persons, including insurance

8  company representatives with full settlement authority, must attend in person unless

9  the settlement judge excuses personal appearance for good cause.

10  4.  If the case settles prior to the scheduled MSC, Plaintiff's counsel shall notify the

11  specific Courtroom, forthwith, of such settlement by email and also CAALA by email

12  to stuart@caala.org.

13  5.  Parties and counsel are ordered to appear in in the assigned Personal Injury

14  Courtroom at the scheduled time and date of the MSC as selected by the parties'

15  counsel.

16  6.  The Court has the discretion to require any party and/or counsel who fails or refuses

17  to comply with this order to show cause why the Court should not impose monetary

18  sanctions.

21  Dated:  Feb. 24, 2020

SAMANTHA P. JESSNER
Supervising Judge of Civil Courts

2

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY:

STATE BAR NUMBER

Reserved for Clerk's File Stamp

TELEPHONE NO.:                                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

**The parties agree that:**

1.  The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

    a.  Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b.  Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c.  Exchange of names and contact information of witnesses;

    d.  Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e.  Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f.  Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

    g.  Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

LACIV 229 (Rev 02/15)
LASC Approved 04/11
For Optional Use

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
     (INSERT DATE)                                        (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case.  The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date: _____

_____          ➢ _____
        (TYPE OR PRINT NAME)                             (ATTORNEY FOR PLAINTIFF)

Date: _____

_____          ➢ _____
        (TYPE OR PRINT NAME)                             (ATTORNEY FOR DEFENDANT)

Date: _____

_____          ➢ _____
        (TYPE OR PRINT NAME)                             (ATTORNEY FOR DEFENDANT)

Date: _____

_____          ➢ _____
        (TYPE OR PRINT NAME)                             (ATTORNEY FOR DEFENDANT)

Date: _____

_____          ➢ _____
        (TYPE OR PRINT NAME)                             (ATTORNEY FOR _____)

Date: _____

_____          ➢ _____
        (TYPE OR PRINT NAME)                             (ATTORNEY FOR _____)

Date: _____

_____          ➢ _____
        (TYPE OR PRINT NAME)                             (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

---

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE: | CASE NUMBER |
|---|---|
| | |

      iii.   Be filed within two (2) court days of receipt of the Request; and

      iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐  Request for Informal Discovery Conference
   ☐  Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                          FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

 **Superior Court of California, County of Los Angeles**

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR:

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

    **Mediation may be appropriate when the parties**
    - want to work out a solution but need help from a neutral person.
    - have communication problems or strong emotions that interfere with resolution.

    **Mediation may not be appropriate when the parties**
    - want a public trial and want a judge or jury to decide the outcome.
    - lack equal bargaining power or have a history of physical/emotional abuse.

---

LASC CIV 271 Rev. 01/20
For Mandatory Use

**How to arrange mediation in Los Angeles County**

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases):

   - **ADR Services, Inc.** Case Manager patricia@adrservices.com (310) 201-0010 (Ext. 261)
   - **JAMS, Inc.** Senior Case Manager mbinder@jamsadr.com (310) 309-6204
   - **Mediation Center of Los Angeles (MCLA)** Program Manager info@mediationLA.org (833) 476-9145
     - Only MCLA provides mediation in person, by phone and by videoconference.

   **These organizations cannot accept every case and they may decline cases at their discretion.**
   Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.
   NOTE: This program does not accept family law, probate, or small claims cases.

b. **Los Angeles County Dispute Resolution Programs**
   https://wdacs.lacounty.gov/programs/drp/
   - Small claims, unlawful detainers (evictions) and, at the Spring Street Courthouse, limited civil:
     - Free, day- of- trial mediations at the courthouse. No appointment needed.
     - Free or low-cost mediations before the day of trial.
     - For free or low-cost Online Dispute Resolution (ODR) by phone or computer before the day of trial visit
       http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

c. **Mediators and ADR and Bar organizations** that provide mediation may be found on the internet.

3. **Arbitration**: Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit **http://www.courts.ca.gov/programs-adr.htm**

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit **http://www.lacourt.org/division/civil/CI0047.aspx**

**Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/CI0109.aspx**
**For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm**

LASC CIV 271 Rev. 01/20
For Mandatory Use

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Charles R. Keller (SBN 37542) / Andrew B. Kreeft (SBN 126673)
FENTON & KELLER, PC
2801 Monterey-Salinas Highway / P.O. Box 791
Monterey, California  93942-0791
TELEPHONE NO.: (831) 373-1241       FAX NO. *(Optional):* (831) 373-7219
E-MAIL ADDRESS *(Optional):* ckeller@fentonkeller.com; akreeft@fentonkeller.com
ATTORNEY FOR *(Name):*   Plaintiffs ALLEN STOBAUGH MARY STOBAUGH

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**12/30/2020**
**Clerk of the Court**
**BY: CAROL BALISTRERI**
**Deputy Clerk**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS:   400 McAllister Street
MAILING ADDRESS:   400 McAllister Street
CITY AND ZIP CODE:   San Francisco, Ca  94102
BRANCH NAME:   CIVIL

PLAINTIFF/PETITIONER:  ALLEN STOBAUGH and MARY STOBAUGH

DEFENDANT/RESPONDENT: PRINCESS CRUISE LINES, LTD., a Bermuda
Corporation; GRANT TARLING, an individual; and DOES 1 to 20, incl.

| REQUEST FOR DISMISSAL | CASE NUMBER:<br>CGC20588517 |
|---|---|

**A conformed copy will not be returned by the clerk unless a method of return is provided with the document.**

**This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)**

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice   (2) ☒ Without prejudice
   b. (1) ☒ Complaint   (2) ☐ Petition
      (3) ☐ Cross-complaint filed by *(name):*                                    on *(date):*
      (4) ☐ Cross-complaint filed by *(name):*                                    on *(date):*
      (5) ☐ Entire action of all parties and all causes of action
      (6) ☐ Other *(specify):**
2. *(Complete in all cases except family law cases.)*
   The court ☐ did ☒ did not waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).*

Date: December 30, 2020

Andrew B. Kreeft, Esq. (SBN 126673) ..................................
(TYPE OR PRINT NAME OF  ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

▶                                    (SIGNATURE)

* If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:  STOBAUGH

☒ Plaintiff/Petitioner     ☐ Defendant/Respondent
☐ Cross-Complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**
Date:

_____
(TYPE OR PRINT NAME OF  ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

▶ _____
(SIGNATURE)

** If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for the cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

Attorney or party without attorney for:
☐ Plaintiff/Petitioner     ☐ Defendant/Respondent
☐ Cross-Complainant

*(To be completed by clerk)*
4. ☐ Dismissal entered as requested on *(date):*
5. ☐ Dismissal entered on *(date):*                        as to only *(name):*
6. ☐ Dismissal **not entered** as requested for the following reasons *(specify):*

**DISMISSAL ENTERED**
**12/30/2020**
**By: CAROL BALISTRERI**
**Deputy Clerk**

7. a. ☐ Attorney or party without attorney notified on *(date):*
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
        ☐ a copy to be conformed    ☐ means to return conformed copy

Date:                                    Clerk, by _____, Deputy

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. Jan. 1, 2013] | **REQUEST FOR DISMISSAL** | Code of Civil Procedure, § 581 et seq.;<br>Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390<br>*www.courts.ca.gov* |
|---|---|---|

35869.35168

**CIV-110**

| | |
|---|---|
| PLAINTIFF/PETITIONER: ALLEN STOBAUGH and MARY STOBA | CASE NUMBER: |
| DEFENDANT/RESPONDENT: PRINCESS CRUISE LINES, LTD., a Be | CGC20588517 |

---

### COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

---

## Declaration Concerning Waived Court Fees

1. The court waived fees and costs in this action for *(name):*

2. The person in item 1 is *(check one below):*
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and costs that were waived in this action have been paid to the court *(check one):*   ☐ Yes   ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

▶ _____

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)   (SIGNATURE)

---

CEB Essential Forms
ceb.com

35869.35168